CORNING and others *v.* DREYFUS.

KREBS and another *v.* SAME.

MADDOX and others *v.* SAME.

ALTSHEED and others *v.* SAME.

DREYFUS and others *v.* SAME.

HOFFHEIMER and others *v.* SAME.

ADDLER and others *v.* SAME.

LAZARD *v.* SAME.

BLOCK and others *v.* SAME.

WEILLER and others *v.* SAME.

*(Circuit Court, E. D. Louisiana. February, 1884.)*

1. ATTACHMENTS—PRIORITY OF LEVIES—STATE AND UNITED STATES COURTS.
   In case of several levies by the same officer, priority depends upon the time of levy, or of commencing to hold under the subsequent processes. To effect a levy upon property in actual possession of the officer no overt act is necessary. In case of actual successive levies, the time when made determines rank or order of priority. In case of no actual subsequent levy, the time when officer commenced to hold under the process determines. In either case, the evidence may come from his return.

2. SAME—PROPERTY HELD BY OFFICER IN DUE PROCESS—SEIZURE UNDER PROCESS OF ANOTHER COURT.
   When property susceptible of manual delivery is physically held by an officer of and under process from a court of one jurisdiction, it is incapable to be subjected to seizure by an officer and under process from a court of another jurisdiction.

3. SAME—UNLAWFUL DETENTION—VOID LEVY.
   A levy upon property, otherwise valid, if effected by means of an unlawful detention of the property is void; but the invalidity of such a levy cannot be urged by a party whose right also springs solely from a seizure effected through the unlawful detention.

Attachment.

*Semmes & Payne*, for Krebs & Spiers and others.

*Chas. S. Rice*, for Corning & Co.

*Bayne & Denegre, Miller & Finney*, and *Walter D. Denegre*, for Hoffheimer & Co.

*T. Gilmore & Sons*, for Lazard and Block & Co.

*D. C. Labatt*, for Weiller & Co.

BILLINGS, J. These causes are submitted together with reference to the distribution of the proceeds of property seized under attachments. The questions are as to the claim of a creditor under an attachment from the state court, and as to the order of priority of creditors obtaining attachments in this court. Various creditors had obtained attachments on Sunday in this court, which were also levied on Sunday. The same and other creditors obtained attachments in several suits, also in this court, some early Monday morning, shortly after midnight, and others between 8 and 10 o'clock A. M., which were also levied upon the same property. The intervenor had obtained his writ from the state court on Saturday. Early Monday morning, shortly after midnight, and while the marshal was holding possession of the property under the Sunday writs alone, the sheriff came to the store, where the property was situated, for the purpose of serving the writ, and demanded entrance, which the marshal refused. The sheriff placed his keepers around the building and guarded the same continuously down to the time of the sale, and served notice of seizure and subsequently process of garnishment upon the deputy marshal in charge of the store, who had executed the processes of attachment from this court. The marshal preserved his possession without interruption from the moment of the seizure down to the time he sold the property under the Monday writs, the Sunday writs having been abandoned. The property seized was the wines and brandies, etc., the stock of a wholesale liquor store.

1. As to the effect of what was done by the sheriff. Nothing is before the court except the proceeds of a sale. They, and they alone, can have an award who show title; and, since all claim under process against the property of a common debtor, those alone who show a levy of the process upon the property; for, in this state, the issuance and existence of the process create no lien. It disposes of this part of the case to say that the sheriff made no seizure—no caption of the property. Its possession was withheld from him, and access to it was forcibly denied him. Whether this was done under color of a good or bad writ, or without any writ, all seizure was prevented, and no lien was effected. This would end the case of the intervenor, as to any privilege upon the fund, unless he can maintain that the marshal, holding under color of a writ from this court, can be made to hold also under a writ from the state court subsequently served by the garnishment process. The authorities for this proposition cited are *Patterson* v. *Stephenson*, unreported, decided by the supreme court of Mis-

souri at the April term, 1883, and *Bates* v. *Days*, 17 FED. REP. 167. Those cases are put, by the courts which decided them, upon a statute of the state of Missouri, which was deemed to have been adopted by the practice act of congress, regulating the procedure in the federal courts. In Louisiana we have no such statute, and there is, therefore, no need to discuss the question as to what would be the legal consequences if one existed. In this state the courts are to be guided by the doctrine which is settled by the cases of *Hagan* v. *Lucas*, 10 Pet. 400, and *Taylor* v. *Carryl*, 20 How. 583, to the effect that when property susceptible of manual delivery has been seized, and is held by the officer of, and under process from, the court of one jurisdiction, it is incapable to be subjected to seizure by another officer of, and under process from, the court of another jurisdiction. The authorities are collated in *Wilmer* v. *Atlanta & R. Air-line R. Co.* 2 Woods, 427, 428. It follows, then, that since the goods were, and continued to be, in the physical possession and custody of the marshal, under writs of this court, the intervenor could have acquired, and did acquire, no interest in the goods under his writ from the state court, and he can have no claim to the proceeds arising from their sale.

2. As to the order of priority of the creditors who attached under the writs from this court, no right is claimed and no right could have been acquired under the Sunday writs or seizures. The statute prohibits (Civ. Pr. art. 207) the institution of suits and all judicial proceedings on Sunday. The question, then, is as to the priority of the attachments which were issued on Monday; *i. e.*, after 12 o'clock on Monday morning. The statute makes the priority of attachments upon the same property to depend upon seizure. Civ. Pr. art. 723; *Scholefield* v. *Bradlee*, 8 Mart. (O. S.) 510; *Hepp* v. *Glover*, 15 La. 461; *Hermon* v. *Juge*, 6 La. Ann. 768. Priority is to be determined by noticing, when necessary, fractions of the day. *Tufts* v. *Carradine*, 3 La. Ann. 430. The property was already in the possession of the marshal, and there is established a definite order in which the writs came into his hands. It is contended that, therefore, this order establishes their rank as liens upon the property. When property is already in the hands of an officer in order to effect a seizure, it needs no overt act beyond his return upon the latter process in order to effect a seizure. *Turner* v. *Austin*, 16 Mass. 181; Drake, Attachm. § 269. But it must appear in some way that the officer commenced to hold under the later processes. The mere receipt of process does not effect a levy. In these cases the deputy marshal, who already held by keepers the property, received at the clerk's office some half dozen writs in the order of the number of the causes upon the docket, and then proceeded to give effect to the processes by proceeding with them and making new levies. He probably did this because of fears as to the validity of his possession under the Sunday writs as the basis of subsequent seizures. Whatever was his

reason, he made fresh levies. His returns show that he levied first the writ in the case of Corning & Co., subject only to the Sunday writs, and that he levied the writs of the next seizing creditors subsequently, and immediately after the levy in the case of Corning & Co.

I think this manner and order of his levying these writs should control. In *Turner* v. *Austin* the court say that when the officer has several writs in his hands at the same time he has a power as to the order of seizure which is liable to abuse. Nevertheless, they maintain that the time of the actual levy or commencement to hold determines. Of course, if the officer wrongfully levied, or omitted to levy, or wrongfully postponed the levy, of one writ to that of another, he would render himself liable; but in this case, since the levies were under writs simultaneously held, though not exactly simultaneously received, upon property already in the officer's possession, but, notwithstanding this fact, were independently and additionally made, it seems to me the question in dispute must be settled by the evidence furnished by the returns. The returns indicate the order in which he levied or commenced to hold under the respective writs. This would, then, settle the order of priority of the several writs of attachment, unless the position taken by the counsel in the case of H. Weiller & Co. is correct. He contends that while his writ was last received and last levied that it is entitled to precedence, and indeed to be counted the sole, valid writ, because the plaintiffs in the earlier writs had used Sunday suits and Sunday processes to detain the property until the Monday writs could be obtained and levied, and that of the writs not so tainted his is the first. As a proposition of law it is indisputable that when a plaintiff has unlawfully obtained possession of a debtor's property for the purpose of levying process upon it, such levy is wrongful, and cannot be upheld as against any one who is so situated that he can urge its invalidity. *Wells* v. *Gurney*, 8 Barn. & C. 769; *Ilsley* v. *Nichols*, 12 Pick. 270; and *Closson* v. *Morrison*, 47 N. H. 482. If this was a suit brought by the debtor against the officer, or if the creditor, who attempted to attach through the sheriff, had been able to acquire any lien upon the property sought to be reached, then the objection could be urged. But it cannot avail, as presented by this creditor; for either the Sunday plaintiffs did not detain unlawfully, and did not thereby obtain a week-day seizure, or else the party here urging the objection is endeavoring equally to profit by the detention. It is as if a plaintiff had brought property within a jurisdiction and then seized, and subsequently a second plaintiff had there obtained and levied process, and sought to establish priority by urging against the first plaintiff the wrongful importation. The answer would be that the illegality furnished the opportunity for both seizures, and neither plaintiff could urge it against the other. Until some party whose title is independent of the detention presents a claim the court can be governed only by the order in which

the levies were made. The seizure of Corning & Co., therefore, ranks first. Next, and as simultaneous seizures, must rank these in Krebs & Spiers, Maddox, Hobart & Co., T. Altsheed & Co., B. Dreyfus & Co., Hoffheimer & Co., William Addler, and Calmer Lazard. And after these, as well as that of Elias Block, the seizure of H. Weiller & Co., which was effected subsequently, viz., at 10:35 of Monday morning. Since the proceeds will more than satisfy the judgment in the case of the first seizure, and will not satisfy the judgments of those cases of simultaneous seizures, the costs must first be paid; second, the judgment in Corning & Co.; and the residue must be divided *pro rata* among Krebs & Spiers, Maddox, Hobart & Co., T. Altsheed & Co., B. Dreyfus & Co., Hoffheimer & Co., William Addler, and Calmer Lazard, according to the amount of their respective judgments, and let the matter be referred to E. R. Hunt, commissioner, to make the tabulated statement as a basis for the decree of distribution.