Dorothy S. McKEITHEN, Individually and on behalf of her Deceased husband, Charles F. McKeithen

v.

The M/T FROSTA, the M/V GEORGE PRINCE, A/S J. L. Mowinkels Rederi, and the Department of Highways of the State of Louisiana.

In the Matter of A/S J. LUDWIG MOWINKELS REDERI, as owner of the M/T FROSTA, petitioning for exoneration from or limitation of liability.

In the Matter of the DEPARTMENT OF HIGHWAYS, STATE OF LOUISIANA ex rel. William J. Guste, Jr., Attorney General, as owner of the M/V GEORGE PRINCE, petitioning for exoneration from or limitation of liability.

Civ. A. Nos. 76–3251, 76–3275 and 76–3654.

United States District Court, E. D. Louisiana.

June 29, 1977.

---

Daniel E. Becnel, Jr., Reserve, La., Joel T. Chaisson, Destrehan, La., Eldon E. Fallon, A. Remy Fransen, Jr., New Orleans, La., James A. George, Baton Rouge, La., Salvador H. Gutierrez, Jr., John R. Martzell, New Orleans, La., for plaintiff.

Walter C. Thompson, Jr., New Orleans, La., for Wanda Zito Auletto.

Walter Carroll, Jr., Charles F. Lozes, Benjamin W. Yancey, New Orleans, La., for S.S. Frosta and A/S J. L. Mowinkels Rederi.

John P. Hammond, John R. Peters, Jr., Henry J. Read, New Orleans, La., for the M/V George Prince.

Nigel Rafferty, New Orleans, La., for Southern American Insurance Co.

Donald Ensenat, New Orleans, La., for Department of Highways, State of Louisiana.

Francis J. Mooney, Jr., New Orleans, La., for New Orleans-Baton Rouge Steamship Pilots Association and Nicholas F. Columbo.

ALVIN B. RUBIN, District Judge:

## OPINION WITH RESPECT TO MOTION TO DISMISS CLAIMS AGAINST THE SUCCESSION OF EGIDIO PAUL AULETTO

The present motion to dismiss claims against the succession of Egidio Paul Auletto raises the issue: Does a wrongful death action under the general maritime law, founded on the decision in *Moragne v. States Marine Lines,* 1970, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339, or a survival action for the damages suffered by the deceased before his death, recognized pursuant to the *Moragne* course by the Circuit Courts of Appeal, survive against the estate of a deceased mariner?

### I.

Mrs. Wanda Auletto is the widow of the deceased pilot of the ferry M/V George Prince, Egidio Paul Auletto. She has qualified as administratrix of his succession. In that capacity, she has filed claims in the proceedings brought by the owners of the M/V George Prince and the M/T Frosta pursuant to 46 U.S.C. §§ 181–189, for exoneration from, or limitation of, liability for claims arising out of the October 20, 1976, collision between those vessels in which seventy-eight commuters lost their lives. The plaintiffs, in turn, have brought maritime wrongful death actions against the succession (see Pre-Trial Order No. 6, Pre-Trial

Order No. 11). The succession argues that these claims should be dismissed because they abated upon the death of Captain Auletto, who died in the same catastrophe.

## II.

■ The Supreme Court, in *Moragne, supra,* recognized a wrongful death action under the general maritime law.[1] But that court has not addressed the question whether the general maritime law provides a survival action. A wrongful death action is brought for the benefit of the decedent's family and other dependents; the amount of recovery is determined by what the members of the protected class would have received from the decedent during his life.[2] A survival or survivorship action is for the recovery of claims the decedent could himself have asserted; the decedent's representative recovers for such items as pain and suffering before death, medical expenses and lost wages.[3] See, Gilmore & Black, The Law of Admiralty, 2d Ed., at 360. The issue presented here is whether the *Moragne* wrongful death action, or the victim's own survival action,[4] or both, survive the death of the tort-feasor.

■ At the outset, we note that the decision in *Moragne* to overrule the *Harrisburg,* 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 resulted from a need for a uniform federal remedy. See Gilmore & Black, The Law of Admiralty, §§ 6–31, 6–32, at 362–369. Similar considerations, as well as the "humane and liberal character" of admiralty proceedings, moved the court in *Sea-Land Services, Inc. v. Gaudet,* 1974, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9, to provide damages for loss of society pursuant to *Moragne.* These principles of uniformity and liberality must be guiding fixtures in charting the development of post-*Moragne* admiralty rules.

## III.

Although several circuit courts have concluded that an action for pain and suffering survives the death of the victim, *Law v. Sea Drilling Corp.,* 5 Cir. 1975, 510 F.2d 242, 248–250; *Barbe v. Drummond,* 1 Cir. 1974, 507 F.2d 794, 799; *Spiller v. Thomas M. Lowe, Jr. & Assoc., Inc.,* 8 Cir. 1972, 466 F.2d 903, 909–911, no court has considered the problem whether maritime wrongful death and survival actions abate upon the tort-feasor's death.[5] The reasoning of the circuit courts in concluding that such a non-statutory survival action exists is peculiarly instructive with regard to the issue raised here.

In *Barbe, supra,* the court refused to supplement federal maritime law with applicable state law survival statutes, *cf., Dugas v. National Aircraft Corp.,* 3d Cir. 1971, 438 F.2d 1386, because resort to specific state schemes would reintroduce the very disparities in recovery, resulting from one's locus at the moment of death, that *Moragne* was designed to eliminate. See *Moragne, supra,* 90 S.Ct. at 1784–1785; *Barbe, supra,* 507 F.2d at 798.[6] As the court in *Barbe* concluded:

1. The court overruled the *Harrisburg,* 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358, which held no cause of action was provided by the general maritime law.

2. As to non-pecuniary benefits that the class would have received such as companionship, see *Sea-Land Services, Inc. v. Gaudet,* 1974, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9.

3. On the various types of survival and death statutes, see *Gaudet, supra,* 94 S.Ct. at 810, note 2; Harper & James, The Law of Torts, 1956, §§ 24.2, 25.13, et seq.

4. The claimant seeks $150,000 for the deceased's pain and suffering, mental anguish and emotional distress prior to death.

5. The provisional administrator of a deceased tort-feasor's estate was cast in judgment in a maritime wrongful death action in *Skidmore v. Grueninger,* 5th Cir. 1975, 506 F.2d 716. However the issue of abatement was not considered on appeal, nor by the trial court. E.D.La., CA No. 70–1015.

6. For these reasons, the court concluded:

   No action lies under state law to recover damages for wrongful death occurring on navigable waters; the wrongful death action under the general maritime law has preempted the field. To allow a state death claim to be joined with a . . . *Moragne* claim

[T]he policy enunciated by the Supreme Court in *Moragne* provides ample support for us to hold that there is a federal maritime survival action, created by decisional law, for pain and suffering prior to death. This conclusion comports well with the philosophy of *Moragne,* in that it remedies the non-existence of a federal cause of action and thereby avoids the problem of making plaintiff's recovery turn on the existence of a state survival statute, as under the *Dugas* theory.

507 F.2d at 799–800.

The Fifth Circuit, which had recognized the survival of a pain and suffering action following death upon the navigable waters of the states in *Dennis v. Central Gulf Steamship Corp.,* 5 Cir. 1972, 453 F.2d 137, cert. denied, 409 U.S. 948, 93 S.Ct. 286, 34 L.Ed.2d 218, has agreed with the court in *Barbe,* and extended the action to the high seas,[7] including the area defined by DOHSA. *Law, supra,* 510 F.2d at 250.

■ The question of abatement of these actions should likewise be governed by a uniform federal rule, not by state law.[8] The rule with respect to abatement should also be the same whether the injured claimant has lived or has died. In either event, the availability of relief for a wrong committed on the navigable waters should not depend upon whether the tort-feasor himself survives. As the Eighth Circuit has stated:

> . . . would destroy the uniformity *Moragne* sought.
> *Hamilton v. Canal Barge Co., Inc.,* E.D.La.1975, 395 F.Supp. 978, 983, note 1.

7. It is difficult to follow the court's reasons in *Barbe* for refusing to allow pain and suffering as part of a *Moragne* action, as opposed to part of a separate survival action:

> [I]n a case like the instant one, where the accident occurred on high seas, it is not so easy to apply *Moragne* to generate a cause of action. The distinction is that *Moragne* provided a cause of action where one did not previously exist, but here a congressionally provided cause of action already exists, namely DOHSA.

507 F.2d at 799. The theory that DOHSA cannot, within its territorial parameters, be supplemented or superseded by a general maritime

Certainly the fortuitous event of death should not deprive the survivors nor benefit the wrongdoer. Such a result would be contrary to the established principles of admiralty.

*Spiller, supra,* 466 F.2d at 909.

Both the failure of the common law to provide for survival of an action following the death of an injured party and its adoption of the rule that claims abate on the death of the tort-feasor result from the historic origins of tort law.[9] According to Harper:

> From the early notions of the untransmittability of blame—and the quasi-criminal nature of early tort law must not be forgotten—to the crystallization of the maxim actio personalis moritur cum persona, the common law was developed . . . that tort actions died with the parties.

Harper, Law of Torts, 1933, at 673–674. At first,

> [A]ll tort actions [were] penal in nature; consequently, when the wrongdoer died, it seemed logical to allow the tort claim against him to lapse since he could no longer be prosecuted for the criminal offense and because the tort action derived from the Crown's action for criminal trespass.

Survival of Tort Actions Under Federal Maritime Law, 16 B.C.Ind.&Comm.L.Rev. 801, 814. See also W. Prosser, Handbook of the Law of Torts, 4th Ed., § 126, at 898.

action, was clearly rejected by the Supreme Court in *Gaudet,* 414 U.S. at 587, 94 S.Ct. at 816, note 22.

8. In *Kernan v. American Dredging,* 1958, 355 U.S. 426, 430, 78 S.Ct. 394, 397, note 4, 2 L.Ed.2d 382, the Supreme Court noted that recovery for damages sustained prior to death on the high seas would survive if based on an appropriate state statute. Of course, under *Law* and *Barbe,* survival does not depend upon an applicable state statute.

9. For a thorough historical analysis of wrongful death and survival actions in admiralty law, see George & Moore, Wrongful Death and Survival Actions Under the General Maritime Law: Pre-Harrisburg Through Post-Moragne, 4 J. Mar.L. &Comm. 1.

A modern rationale for the rule has been offered:

> An alleged tortfeasor who is deceased may have been the only witness to events which might fairly exculpate him from legal responsibility. The rule that a tort action against him abates with his death was predicated upon the belief that public policy would be best served by avoiding the possibility that heirs suffer injustice because death foreclosed the opportunity for successful defense.

*Capital Insurance & Surety Co. v. Kelly,* 9th Cir. 1966, 361 F.2d 567, 569, cert. denied, 385 U.S. 1025, 87 S.Ct. 742, 17 L.Ed.2d 673. But, much like a dead man's statute, such a prophylactic rule is a drastic remedy for an infrequent problem and accords too little respect to the judicial system's capacity for ferreting out the truth of a controversy in the absence of the best of all possible evidence. See McCormick, Evidence, 2d ed., § 65.

Harper and James contend:

> [A]llow[ing] suits against the tort-feasor's personal representative as well as the revival of . . . pending actions . . . is the only satisfactory type of provision.

Harper & James, The Law of Torts, 1956, Vol. 2, § 24.2, 1288. Prosser also favors the non-abatement of tort actions, arguing "that the question is . . . one of why a fortuitous event such as death should extinguish a valid action," and predicting, "ultimately all tort actions will survive to the same extent as those founded on contract." Prosser, The Law of Torts, 4th Ed., § 126, at 901. This prophecy has largely materialized. Through legislation, survival "has now become the rule in almost every common law jurisdiction."[10] *Cox v. Roth,* 1954, 348 U.S. 207, 210, 75 S.Ct. 242, 244, 99 L.Ed. 260. Additionally, "the federal courts, at least in the more recent cases, lean strongly toward . . . survival." *Pritchard v. Smith,* 8th Cir. 1961, 289 F.2d 153, 158, 88 A.L.R.2d 1146, 1153. See also, *Rogers v. Douglas Tobacco Board of Trade,* 5 Cir. 1957, 244 F.2d 471, 483.

Hence, the early common law rule has outgrown its original vitality and purpose. It is not consistent with the function of modern tort law, nor with the broad remedial policies expressed in *Moragne.* Accordingly, it is the common law rule, rather than the claims against the succession, that ought not survive.

### IV.

The methodology to be followed in giving full shape to the *Moragne* remedies has been described by the Fifth Circuit thus:

> . . . [W]e look first to existing maritime law to which *Moragne* has allowed access in a death action. We next examine the remedial policies indicated by Congress in the federal maritime statutes. Heed to these statutes will assist in ensuring that 'uniform vindication of federal policies' mandated by the *Moragne* Court. . . . Finally we look for 'persuasive analogies' in the state wrongful death acts.

*Petition of M/V Elaine Jones (Canal Barge),* 5th Cir. 1973, 480 F.2d 11, 31, 1973 A.M.C. 843, 869–873.

Maritime law prior to *Moragne,* like the common law, did not provide for the survival of personal rights of action in tort. *Cortes v. Baltimore Insular Line, Inc.,* 1932, 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368. But if general maritime law did not provide for survival, it found nothing repugnant in allowing for it when provided for by relevant state law. *Just v. Chambers,* 1941, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903. Moreover, after *Moragne,* death could no longer be termed "a composer of strife by the general law of the sea." *Cortes, supra,* 287 U.S. at 371, 53 S.Ct. at 174. The First Circuit in *Barbe* concluded *Cortes* and its progeny abated with *Moragne.* 507 F.2d at 800, note 6.

The federal statutory scheme does provide for defendant survival. The Jones Act expressly provides for plaintiff survival, 46 U.S.C. § 688, and this action can be maintained by a personal representative of the victim even against a deceased defendant.

---

10. Restatement, Torts § 900 (1939) reflects the common law rule.

*Cox v. Roth,* 1955, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260. Although DOHSA does not contain either kind of survival provision, "the courts [have] hit upon a variety of devices under which the decedent's pre-death damages [are] included in . . . DOHSA actions." Gilmore & Black, The Law of Admiralty, 2d Ed., at 361. Under the rule of *The Hamilton,* 1907, 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264, recovery under DOHSA can be supplemented by a decedent's personal action under a relevant state survival statute. See *Petition of Gulf Oil Corp.,* S.D.N.Y.1959, 172 F.Supp. 911, and cases cited therein. The issue of defendant survival (or abatement) under DOHSA does not appear to have been determined.

Finally, prior to *Moragne,* where personal injuries were sustained in state territorial waters, a survival action could be had against the estate of the deceased tort-feasor under a relevant state statute. *Just v. Chambers,* 1941, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903. The Supreme Court has taken "note that advancing civilization and social progress have brought 43 of our states to include in their general law the principle of the survival of causes of action against deceased tort-feasors, and that such recovery, rather than being exceptional, has now become the rule in almost every common-law jurisdiction." *Cox v. Roth,* 1955, 348 U.S. 207, 210, 75 S.Ct. 242, 244, 99 L.Ed. 260. As noted in Part III of this opinion, the commentators concur in this result. See also *Gaudet, supra,* 414 U.S. at 575, 94 S.Ct. at 810, note 2; 1 Speiser, Recovery for Wrongful Death, 2d Ed. 1975, § 8:15, at 758. Such an action would have been available under Louisiana law. *Ruiz v. Clancy,* 1935, 182 La. 935, 162 So. 734, 737; *Smith v. Nicholson,* 1851, 6 La.Ann. 704.

■ Although such a direct application of state law runs contrary to the uniformity envisioned by *Moragne,* the *Moragne* death remedy should, for completeness, provide what was generally available under state remedial schemes prior to the decision. The court in *Gaudet, supra,* was moved, in part, to provide damages for loss of society under *Moragne* so as to "align the maritime wrongful-death remedy with a majority of state wrongful-death statutes." Providing for a survival action here would produce a similar alignment. As the Fifth Circuit has observed, in a related context, "It would be anomalous for us to take away a *pre-Moragne* remedy which was almost universally available by the application of state survival statutes when there is no federal maritime policy against [it]." *Dennis v. Central Gulf Steamship Corp.,* 5th Cir. 1972, 453 F.2d 137, 140.

■ Hence, to permit a maritime tort action to die with the tort-feasor would render *Moragne* less-encompassing than the federal statutory and state law remedial schemes it was intended to supplant. Yet *Moragne* "requires that the shape of the new maritime wrongful-death remedy . . . be guided by the principle of maritime law that 'certainly it better becomes the humane and liberal character of the proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules.' *The Sea Gull,* 21 F.Cas. 909 (No. 12,578) (C.C.Md.1865), quoted in *Moragne,* 398 U.S. at 387, 90 S.Ct. at 1781." *Gaudet, supra,* 414 U.S. at 583, 94 S.Ct. at 814.

No such obstacle lies in our course, for, "as admiralty takes cognizance of maritime torts, there is no repugnancy to its characteristic features either in permitting recovery for wrongful death or in allowing compensation for a wrong to the living to be obtained from a tortfeasor's estate." *Just v. Chambers, supra,* 312 U.S. at 392, 61 S.Ct. at 693.

## V.

Counsel for the succession contends that imposing such a remedy against a deceased mariner, who perished in the same incident as plaintiff's decedent,[11] would withdraw from him and his estate the "special solici-

11. See, Annotation, Survival of Cause of Action for Personal Injury or Death Against Tort-feasor Killed in the Same Accident, 70 A.L.R. 1319.

tude" of the admiralty. It is contended that whatever award the succession receives will be exhausted by the claims against the succession. But whether or not a judgment against the succession could be used to attach successful damage claims by the succession, either pursuant to *Moragne* or the Jones Act or both, is not now before us. It suffices that solicitude for men who go to sea has never warranted cloaking a mariner or his estate with immunity, nor depriving others who face the waters' perils of their appropriate remedies.[12] Accordingly, the motion to dismiss the claims against the succession of Paul Egidio Auletto is DENIED.

---

**12.** The special solicitude is not reserved for mariners, but extends to all who are injured within the jurisdiction. *Gaudet, supra,* 414 U.S. at 588, 94 S.Ct. at 816.