**CALIFORNIA HOME BRANDS, INC. and Pan Pacific Fisheries, Plaintiffs–Appellants,**

v.

**Danny FERREIRA, Defendant–Appellee.**

No. 87–6124.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 5, 1988 *.

Decided March 28, 1989.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Lawrence W. Kaye, Lillick, McHose & Charles, San Diego, Cal., for plaintiffs-appellants.

Irwin M. Zalkin, Law Offices of Irwin M. Zalkin, San Diego, Cal., for defendant-appellee.

Forrest Booth, Kurt Micklow, Daniel J. Crawford, Hancock, Rothert & Bunshoft, San Francisco, Cal., for amicus curiae American Tuna Boat Ass'n.

M.E. De Orchis, De Orchis and Partners, Craig V. Resile, New York City, for amicus curiae Maritime Overseas Corp.

Terry A. Bell, Ballay, Braud and Bell, A Professional Law Corp., Belle Chase, La., for amicus curiae Ass'n of Trial Lawyers of America.

Before FARRIS, POOLE and FERGUSON, Circuit Judges.

POOLE, Circuit Judge:

California Home Brands, Inc. and 'Pan Pacific Fisheries (hereafter collectively CHB), shipowners, appeal dismissal of their suit for indemnity and contribution from their seaman-employee, Danny Ferreira, whose negligence allegedly caused the injury of another crewmember. The district court granted Ferreira's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that neither traditional maritime law nor any federal statute authorizes an action by an employer against a seaman-employee for indemnity and contribution for injury to another crewmember, and that public policy does not support recognizing such a claim. We affirm.

## FACTS

Manuel Rebelo, a crewmember of the M/V Pan Pacific, allegedly sustained injuries in January 1985 while working on board the vessel. In response to his claim for maintenance and cure, CHB, the owner of the vessel, sued for declaratory relief, denying that it owed any maintenance or payment of cure. Rebelo and his wife counterclaimed for negligence under the Jones Act, 46 U.S.C.App. § 688, and unseaworthiness and maintenance and cure under general maritime law. '

Danny Ferreira, also an employee of CHB, was "deck boss" of the vessel on which Rebelo's injury allegedly occurred. Manuel Rebelo is the father-in-law of Ferreira and was hired at Ferreira's request. More than a year after CHB initiated the action against Rebelo, it moved for leave to file a third party complaint for indemnification and contribution against Ferreira, alleging that his negligence had caused Rebelo's injury. The motion was denied as untimely.

This action arose when CHB filed a separate suit against Ferreira seeking indemnity and contribution for any liability it might have to Rebelo. By stipulation of the parties, this suit was consolidated with CHB's initial action for declaratory relief and Rebelo's counterclaim. Ferreira moved to dismiss CHB's complaint against him under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief could be granted. After a hearing, the district court granted the motion, holding that CHB's suit against its own employee for indemnity and contribution for the injury of a coemployee was barred as a matter of law. *C.H.B. Foods, Inc. v. Rebelo*, 662 F.Supp. 1359 (S.D.Cal.1987).

We have jurisdiction over this appeal from a final order and judgment of the district court dismissing CHB's action for indemnity and contribution. 28 U.S.C. § 1291.

## DISCUSSION

The sole issue presented in this appeal is whether a shipowner-employer who may be liable to an injured seaman-employee under the Jones Act is entitled to seek indemnity and contribution from another of its employees whose negligence allegedly caused the injury. We review *de novo* the district court's dismissal for failure to state a claim. *Guillory v. County of Orange*, 731 F.2d 1379, 1381 (9th Cir.1984).

### A. *Traditional Maritime Law*

The district court heard this case pursuant to 28 U.S.C. § 1333(1), which grants district courts original jurisdiction over admiralty and maritime suits. In determining the rights and duties of parties to a maritime action, the court must look to the general rules of maritime law or specific enactments of Congress.

It has long been recognized that principles of maritime law are distinct from the common law, particularly in the area of employment relations. *E.g., Cortes v. Baltimore Insular Line Inc.*, 287 U.S. 367, 377, 53 S.Ct. 173, 176, 77 L.Ed. 368 (1932); *The City of Alexandria*, 17 F. 390, 395–96 (S.D.N.Y.1883). As Justice Story wrote:

> the maritime law furnishes entirely different doctrines upon [the rights and duties of seamen,] as well as many other subjects, from the common law ... [Seamen] are liable to different rules of discipline and sufferings from landsmen. The policy of the maritime law, for great and wise and benevolent purposes, has built up peculiar rights, privileges, duties, and liabilities in the sea service which do not belong to home pursuits.

*Reed v. Canfield*, 20 F. 426, 428 (Cir.Ct., D.Mass.1832). Thus, in deciding whether CHB may seek indemnity or contribution from Ferreira, common law doctrines governing land-based employment are not controlling. Instead, we are guided by those peculiar rules specifically evolved in the context of maritime employment.

Traditional maritime law recognized only two claims by a seaman injured in the course of his employment. The Supreme Court summarized these rights of the seaman in *The Osceola*, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903), after an exhaustive review of English, American and Continental authorities on maritime law. First, a seaman injured while on board a vessel was entitled to "maintenance and cure," and to his wages, at least until the end of the voyage. *Id.* at 175, 23 S.Ct. at 487. And secondly, a seaman could recover damages for injuries sustained due to the unseaworthiness of the ship. *Id.* at 175, 23 S.Ct. at 487.

A vessel owner's duty to provide maintenance and cure was implied from the employment contract between the shipowner and the seaman. Although contractual in nature, this duty could not be abrogated by agreement of the parties. *See, e.g., Cortes*, 287 U.S. at 371, 53 S.Ct. at 174. Similarly, the owner's duty to provide a seaworthy ship was absolute. Once a seaman proved that his injuries were caused by the unseaworthy condition of the vessel or its equipment, the shipowner was liable regardless of fault. *Carlisle Packing Co. v. Sandanger*, 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed. 927 (1922).

Beyond these two rights of action, however, the seaman could assert no claim against the shipowner for injuries sustained on board. The common law concept of negligence as a basis for tort liability was not extended to employment related injuries at sea. In *The City of Alexandria* the court stated that

> the maritime law makes no account of mere ordinary negligence ... More or less negligence is in fact to be expected, and the rules long established, as regards the relief to be afforded, are irrespective of such negligence, whether by the seaman or others.

*The City of Alexandria*, 17 F. at 396. In another maritime injury case, *Chelentis v. Luckenbach S.S. Co.*, 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918), the Court held that "by virtue of the inherent nature of the seaman's contract, the defendant[-owner]'s negligence and the plaintiff[-seaman]'s contributory negligence were totally immaterial considerations in this case." *Id.* at 379–80, 38 S.Ct. at 502.

With the concept of negligence irrelevant to liability, the seaman could not recover consequential damages when injured through the negligence of his ship's owner, master or other employees. Beyond maintenance and cure, the vessel owner owed him no compensation for injuries sustained while in the ship's service. To mitigate the harsh effects of the traditional rule, Congress passed the Jones Act, 46 U.S.C.App. § 688, in 1920, creating a negligence right of action for seamen against their employers.

B. *Indemnity for Jones Act Liability*

■ CHB seeks indemnity or contribution from its employee Ferreira for any damages it may have to pay another employee, Rebelo, for his shipboard injuries. Rebelo has asserted three claims against CHB: maintenance and cure, unseaworthiness and negligence under the Jones Act. CHB concedes that a seaman does not owe any duty to his fellow employees to furnish a seaworthy vessel or to provide maintenance and cure. It cannot then asset that Ferreira must indemnify it for these expenses. Thus, the sole basis for CHB's claim for indemnity and contribution from Ferreira is its own possible Jones Act liability to Rebelo.

It is well-settled that the Jones Act created a negligence cause of action *only* against the employer. *See, e.g., Allen v. U.S.*, 338 F.2d 160, 162 (9th Cir.1964), *cert. denied*, 380 U.S. 961, 85 S.Ct. 1104, 14 L.Ed.2d 152 (1965). It did not provide the seaman with a right of action against a fellow employee for negligence. *Pearson v. Rowan Companies, Inc.*, 674 F.Supp. 558 (E.D.La.1987); *Ivy v. Security Barge Lines Inc.*, 89 F.R.D. 322 (N.D.Miss.1980). Nevertheless, appellant now argues that in providing the injured seaman with a remedy against his employer, Congress implicitly intended to allow ultimate liability to rest upon another crewmember.

CHB contends that if Congress had intended to protect the seaman from personal liability, the Jones Act would have included an express immunizing provision. It argues that since the Longshoremen and Harborworkers' Compensation Act (LHCA), 33 U.S.C. §§ 901, *et seq.*, explicitly exempts coworkers from suit by an injured longshoreman, the absence of such a provision in the Jones Act is proof that Congress did not intend a similar protection for the seaman.

However, appellant's argument ignores the substantial differences between the two statutes. The LHCA was intended to be a comprehensive workers' compensation act for longshoremen, completely determining the rights and liabilities of the employer and employee. The Jones Act, in contrast, was enacted for the limited purpose of creating a negligence cause of action against vessel owners which was otherwise unavailable to seamen. Whatever the liabilities and immunities of the seaman were, the Jones Act did not purport to change them.

Moreover, permitting a shipowner to sue its employee for indemnification for its Jones Act liability would be contrary to the history and purposes of the statute. "The Jones Act was welfare legislation that created new rights in seaman." *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949). Its purpose was to benefit and protect seamen by enlarging, not narrowing, the remedies available to them. *E.g., The Arizona v. Anelich*, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075 (1936). Interpreting the statute to allow lawsuits against seamen by their employers would frustrate the beneficent purposes of the Jones Act.

C. *Tort Indemnity under General Maritime Law*

Appellant asserts that general maritime law permits any shipowner to sue its employee for tort indemnity. It argues that tort liability in maritime law is based on concepts of fault and that any party forced to pay damages is entitled to seek indemnification from the actor ultimately responsible for the injury.

The Supreme Court's decisions in *Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp.*, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952) and *Cooper Stevedor-*

*ing Co., Inc. v. Fritz Kopke, Inc.,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974) establish general principles of maritime indemnity and contribution. In *Halcyon,* a shipowner was sued by a longshoreman for injuries sustained on board. The shipowner sought to join the longshoreman's employer, who was otherwise exempted by statute from negligence liability, as a third party defendant. The Supreme Court held that no right of contribution existed in such a non-collision maritime case.

Similarly, in *Cooper,* an injured longshoreman sued a vessel owner, who in turn impleaded a stevedoring company as a third party defendant. However, the two cases differ in that the injured longshoreman in *Cooper* was not an employee of the third party defendant and could have sued it directly. The Supreme Court held that in such a situation, the vessel owner was entitled to implead the stevedoring company for contribution as a joint tortfeasor.

Appellant's conclusion that these cases establish a right to contribution in all cases except where the indemnitor is *expressly immunized* is too sweeping. While it is reasonable to look for an express immunization where the defendant's liability was clearly established prior to the statute, the lack of an immunizing provision should not be considered proof that Congress intended to create liability where there was none before. In short, the *absence* of an immunizing provision alone should not be decisive as to the availability of indemnity.

A more plausible interpretation is that *Halcyon* and *Cooper* together stand for the proposition that indemnification is not available unless the indemnitor could be held directly liable to the person injured. Such a reading is consistent with this court's approach to indemnity in non-maritime cases. *United Air Lines, Inc. v. Wiener,* 335 F.2d 379, 403 (9th Cir.1964), *cert. dismissed,* 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964). Thus, unless a cause of action exists whereby one seaman can sue another for shipboard injuries, the employer can have no right of indemnification or contribution from the employee.

### D. Co-Employee Liability

The district court found that before the statutory rights of action were created, a seaman could not sue his co-employee for negligence. Since the Jones Act only authorized negligence suits against the employer, it concluded that Ferreira could not be directly liable to Rebelo and therefore, no basis existed for CHB's claim for indemnity against Ferreira. 662 F.Supp. at 1362.

CHB challenges the district court's finding that Rebelo could not have sued Ferreira for his injuries, arguing that seamen were historically free to sue their co-employee for negligence. However, as seen above, the concept of negligence was wholly irrelevant to determining a seaman's remedies for employment related injuries before the Jones Act. The maritime law initially took no account of negligence because it recognized the very difficult conditions under which seamen work. The hazardous physical conditions and necessity of a rigorous discipline on board a vessel meant that "more or less negligence" was "to be expected." *City of Alexandria,* 17 F. at 396. If applied to seamen, ordinary common law rules of negligence would have a harsh result because of the extreme circumstances of maritime work.

CHB does not offer any cases in which a seaman *did* successfully sue a fellow employee for negligence prior to the Jones Act. Instead it lists several cases involving the intentional tort of assault from the early nineteenth century. The fact that one seaman may recover directly from another for an assault has no bearing on the issue in this case, for negligence is a separate basis for tort liability, conceptually distinct from the intentional torts. The assault cases do not establish the seaman's right to sue a fellow crewmember for negligence any more than the existence of a negligence action under the Jones Act imposes strict liability on shipowners for all their employees' injuries.

CHB attempts to further bolster its argument that seamen could sue co-employees for negligence by relying on the language of the Limitation of Shipowners' Liability Act (LSLA), 46 U.S.C.App. §§ 182, *et*

*seq.* The LSLA was enacted by Congress in 1851 to encourage the development of the American shipping industry by limiting the liability of shipowners to the amount of their investment. Section 187 of the Act stated that it should not be construed to

> take away or affect the remedy to which any party may be entitled, against the master, officers or seamen ... on account of any embezzlement, injury, loss or destruction of merchandise, or property ... or on account of any negligence, fraud, or other malversation of such master, officers or seamen ...

In short, the provisions limiting maritime liability only affected the liability of owners, not their employees.

The appellant reads too much into § 187 when it argues that it expressly recognizes the right of one seaman to sue another. This provision works only to limit the scope of the LSLA; it does not create any new causes of action. It is merely a blanket recital intended to preserve whatever actions might already exist, without specifying what these are.

In recent years, the district courts which have confronted the issue have found that a seaman does not have a cause of action against a fellow-employee for negligence.[1] The court in *Pearson*, 674 F.Supp. at 559, stated that "it is well-settled under the Jones Act and even before its enactment, that a seaman could not sue a fellow employee for negligence." In *Ivy, supra,* the plaintiff in a Jones Act suit against a vessel owner moved to amend his complaint to add as defendants two co-workers whose negligence allegedly caused his injury. In denying the plaintiff's motion, the court

explicitly rejected his argument that since the Jones Act does not specifically exclude co-employees from liability, the action should be allowed. *See also West v. Marine Resources Commission,* 330 F.Supp. 966 (E.D.Va.1970); *Vincent v. Penrod Drilling Co.,* 372 So.2d 807 (La.Ct.App. 1979).

In short, there is no support in either traditional or modern maritime case law for appellant's argument that one seaman may sue a fellow crewmember for negligence. Since indemnity is only available where the would be indemnitor is independently liable to the injured party, a shipowner-employer has no right to be indemnified by its employee for damages paid to another crewmember under the Jones Act.

### E. *Implied Contractual Right of Indemnity*

CHB argues that it has a right to indemnity from Ferreira on an implied contractual basis. It correctly states that a seaman's breach of a positive duty may bar his recovery for employment related injuries and that a shipowner may be entitled to indemnity from a third party who breaches a warranty of workmanlike performance. By a leap of logic, appellant then concludes that these two vague statements of law taken together impose on every seaman an implied contractual duty not to act negligently, which entitles his employer to sue him for indemnity in the event of a breach. Such a conclusion is wholly unsupported by the cases.

█ In *Reinhart v. United States,* 457 F.2d 151 (9th Cir.1972), cited by the appel-

---

1. The appellant cites *McKeithen v. M/T Frosta,* 435 F.Supp. 584 (E.D.La.1977) and *Trexler v. Tug Raven,* 290 F.Supp. 429 (E.D.Va.1968) as modern examples of co-employee liability for negligence. In *McKeithen,* the court held that plaintiffs could maintain a suit against the estate of a negligent ferry pilot. The court, however, was concerned solely with whether a maritime wrongful death action survived the death of the tortfeasor. It did not address co-employee liability and it appears from the opinion that the plaintiffs were not fellow crewmembers, but passengers who lost their lives in the accident.

    Nor does *Tug Raven v. Trexler* provide a clear example of co-employee liability. In that case,

the district court found a crewmember personally liable for "gross negligence of a high degree" which caused the death of a fellow employee. However, the Fourth Circuit reversed this finding of the crewmember's personal liability as clearly erroneous on the facts. 419 F.2d 536 (4th Cir.1969), *cert. denied,* 398 U.S. 938, 90 S.Ct. 1843, 26 L.Ed.2d 271 (1970). Although the circuit court did not address the underlying legal issue, the same district court which decided *Trexler* later denied a seaman a negligence action against a fellow worker. *West v. Marine Resources Commission,* 330 F.Supp. 966 (E.D.Va.1970).

lant, this court adopted the "primary duty rule," first articulated by the Second Circuit in *Walker v. Lykes Bros. S.S. Co.*, 193 F.2d 772 (2nd Cir.1952). Under this doctrine, a seaman-employee may not recover from his employer for injuries caused by his own failure to perform a duty imposed on him by his employment. For example, the plaintiff in *Reinhart*, as Chief Mate of the ship, bore primary responsibility for inspecting and correcting the dangerous condition which caused his injury. In holding that the plaintiff's suit against the shipowner was barred, we made clear that the plaintiff must have breached some *positive* duty for the rule to apply, for mere contributory negligence is *not* a bar to recovery.[2]

■ Even assuming that Ferreira's alleged negligence amounted to breach of a primary duty,[3] *Reinhart* has no application in this case, for the primary duty rule works only to bar a plaintiff's suit for damages when his injury resulted from his own breach; it does not create any rights against third parties. If Rebelo's failure to perform his assigned tasks caused his injury, CHB might assert the primary duty rule as a defense to his suit for damages. However, it in no way authorizes CHB's suit against Ferreira.

In *Flunker v. United States*, 528 F.2d 239 (9th Cir.1975), we allowed a shipowner liable to an injured employee to sue a third party for indemnity based on an implied warranty of workmanlike performance. As we noted in that case, the doctrine of seaworthiness imposes a heavy burden on shipowners, who are liable for the defective physical condition of their vessels regardless of fault. *Id.* at 242. The warranty of workmanlike performance is intended to ease the burden of *absolute* liability by permitting a shipowner to recover against a contracting party whose poor workmanship created the dangerous condition. *See also Campbell Industries v. Offshore Logistics Int'l*, 816 F.2d 1401 (9th Cir.1987). In this case, CHB seeks indemnity from Ferreira for its Jones Act liability. Since Jones Act suits are based on negligence, not any absolute duty of the shipowner, the rationale for implying a warranty of workmanlike performance does not apply here.

In *Flunker* we cautioned that "a covenant of workmanlike performance will not be implied in favor of a shipowner unless there is a relationship between the tortfeasor and the shipowner in the context of shipping that makes the implication reasonable." 528 F.2d at 243. Numerous court decisions have considered the nature of the maritime employment relationship and the relative burdens appropriately placed on the parties. As Justice Cardozo wrote:

The conditions at sea differ widely from those on land, and the diversity of conditions breeds diversity of duties ... 'The master's authority is quite despotic and sometimes roughly exercised, and the conveniences of a ship out upon the ocean are necessarily narrow and limited.' Out of this relation of dependence and submission there emerges for the stronger party a corresponding standard or obligation of fostering protection.

*Cortes, supra*, 287 U.S. at 377, 53 S.Ct. at 176 (citations omitted). *See also Ceja v. Mike Hooks, Inc.*, 690 F.2d 1191, 1193 (5th Cir.1982). Given the conditions of maritime employment, the implication of a covenant

---

2. In *Reinhart*, the plaintiff sought recovery on a theory of unseaworthiness. This court noted that contributory negligence is not a defense to an unseaworthiness claim, citing *Socony–Vacuum Co. v. Smith*, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939). It is also true that contributory negligence does not bar an action under the Jones Act. *Jacob v. New York City*, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166 (1942).

3. Appellant contends that Ferreira could not recover from CHB if he had been injured because the accident in question allegedly resulted from Ferreira's "neglect of his own contractual duties as deck boss." In the absence of a more complete record, we cannot determine whether Ferreira's alleged negligence rises to the level of breach of a "primary duty." However, mere negligence alone would *not* be sufficient for finding such a breach. In order for the primary duty rule to apply, the employee must have failed to perform a specific, *positive* duty for which he had *primary* responsibility. *See Hudson Waterways Corp. v. Schneider*, 365 F.2d 1012 (9th Cir.1966). To find otherwise, and equate breach of a primary duty with ordinary negligence, would in effect resurrect contributory negligence as an absolute defense to a shipowner's liability.

of workmanlike performance running from the seaman to his employer and entitling the latter to indemnity is not a reasonable one.

### F. Policy Considerations

The appellant asserts that the public has a strong interest in encouraging every individual, especially employees, to act with due care in order to prevent accidents from occurring in the first place. According to CHB, the common law right of indemnity developed in response to the "harsh" rule of respondeat superior, whereby an employer is vicariously liable for the wrongs of his employee committed in the scope of his employment. Since it is not protected by any type of workers' compensation statute which fixes its liability in advance, but is vulnerable to large judgments under a fault based system, CHB argues that it should be allowed to seek indemnification from employees whose negligence exposes it to liability.

However, as the appellant itself has pointed out, shipowners *are* protected from excessive liability by the LSLA. Soon after the Jones Act was passed, the Supreme Court held that the negligence actions it authorized are subject to limitation, just like any other suit for personal injury or death. *In Re East River Towing Co.*, 266 U.S. 355, 45 S.Ct. 114, 69 L.Ed. 324 (1924).

Moreover, appellant's contention that more accidents will occur if each individual is not personally liable for his acts must be evaluated in light of other policy concerns. Congress and a majority of state legislatures,[4] in establishing workers' compensation systems, have determined that the public good advanced by assuring adequate recovery for workplace injuries and spreading the costs of these injuries outweighs any speculative risk that employees might grow careless on the job without the threat of liability.

The rationale for protecting land workers from personal liability under workers' compensation systems is even more compelling in the maritime context. The physical conditions under which the seaman labors are extremely hazardous. He works on an unstable and often slippery surface, subject to extreme sea and weather conditions. His duties may require his attention at all hours of the day and night. "He is often under the necessity of making quick decisions with little opportunity or capacity to appraise the relative safety or alternative courses of action." *Socony–Vacuum Co. v. Smith*, 305 U.S. 424, 431, 59 S.Ct. 262, 266, 82 L.Ed. 265 (1939). Under such extreme circumstances, even an ordinarily careful worker may have momentary lapses of due care. To subject the seaman working under these conditions to the costs of defending lawsuits by his employer and the threat of ultimate liability would place an intolerable burden on those undertaking what is already a difficult occupation.

Allowing employer indemnity suits against their employees would also defeat the purposes of the Jones Act. With the threat of employer suits for indemnity hanging over them, seamen might be reluctant to make claims for fear of provoking a lawsuit against themselves or bankrupting their coworkers. Moreover, employers might use the indemnity suits to retaliate against those who provide information about the injuries of their fellow workers. We conclude that allowing shipowner-employers to sue their employees for indemnity or contribution would hinder the Jones Act purpose of facilitating compensation to injured seamen.

The maritime law recognizes the unique conditions of a seaman's employment. The Supreme Court has written: "The seaman, while on his vessel, is subject to the rigorous discipline of the sea and has little opportunity to appeal to the protection from abuse of power which the law makes readily available to the landsman ... He cannot leave the vessel while at sea" to avoid dangerous conditions on board. *Id.* at 430, 59 S.Ct. at 266. For these reasons, "seamen are the wards of the admiralty, whose traditional policy it has been to avoid, within reasonable limits, the application of rules of the common law which would affect them harshly because of the special circum-

---

**4.** 2A Larsen, *Workmen's Compensation Law,* § 72.21 (1988).

stances attending their calling." *Id.* at 431, 59 S.Ct. at 266. *See also Mahnich v. Southern S.S. Co.,* 321 U.S. 96, 103, 64 S.Ct. 455, 459, 88 L.Ed. 561 (1944).

In light of the maritime law's special solicitude for the seaman and the history and purposes of the Jones Act, we conclude that a shipowner-employer is not entitled to sue its seaman-employee for indemnity or contribution for its own Jones Act liability to another injured employee.

The judgment of the district court is affirmed.