**CAMPBELL INDUSTRIES, INC., Third Party Plaintiff, Appellant and Cross-Appellee,**

v.

**OFFSHORE LOGISTICS INTERNATIONAL, INC., Third Party Defendant, Appellee and Cross-Appellant.**

Nos. 85–6419/6429.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 2, 1986.

Decided May 12, 1987.

Ernest M. Robles, Forrest Booth, San Francisco, Cal., for third-party plaintiff, appellant and cross-appellee.

William P. Barry, Los Angeles, Cal., for third-party defendant, appellee and cross-appellant.

Before WALLACE, SNEED and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an admiralty suit for indemnification arising out of injuries to a seaman while a contractor was repairing the ship. The suit was brought by the shipowner, Offshore Logistics International, Inc., against the contractor, Campbell Industries, Inc. At the time of the accident, Campbell's employees were operating a crane in the course of the repairs. A light fixture fell from the crane's boom and struck a crew member, Robert Thurman, on the head and face. As a result of this accident, Offshore paid Thurman maintenance and cure benefits. After a trial on Offshore's claim for indemnification of the amount it paid Thurman, the district court held that Campbell's negligence caused Thurman's injury and that Campbell, therefore, must indemnify Offshore. Campbell appeals.

Offshore cross-appeals the district court's denial of its claim for attorney fees. Campbell originally impleaded Offshore as a third-party defendant under Fed.R.Civ.P. 14(c). Offshore contends that it is entitled to recover fees and costs incurred in defending against Thurman before Thurman settled and dismissed his case.

There is a threshold jurisdictional issue. We must address Offshore's motion to dismiss for lack of subject matter jurisdiction filed during the pendency of these appeals.

### A. *Timeliness of Appeal*

Offshore contends that both appeals in this case were untimely filed. The district court filed and entered its judgment on May 9, 1985. Both Campbell and Offshore filed timely motions pursuant to Fed.R. Civ.P. 52(b) to amend the findings and judgment. On July 29, 1985, the court heard these motions and indicated from the bench that certain findings had to be amended. The court stated:

> Now what I would like to have done— and I'm not sure who prevails here because both sides are getting something— will be to have a—the findings of fact and conclusions of law amended and the judgment amended in toto. In other

words, I don't want a little order that says paragraph so and so of the findings are changed in a specified fashion, or a certain paragraph or figure of the judgment is changed, because I think that creates confusion.

After directing Offshore's counsel to prepare a "complete and full document to reflect the changes," the court reiterated that it wanted "a separate amended judgment complete in and of itself without reference to the prior judgment in the matter." On that same day the clerk entered a minute order in the docket which read: "Ent Ord, Hrg Campbell's Mot to Amend Findings & Judgment—Granted in part and Denied in part; Hrg Offshore's Motion to Amend Finding & Judgment—Granted in part and Denied in Part (S)."

The district court filed its amended findings and judgment on September 25, 1985, and the clerk entered them on October 3, 1985. Campbell filed its notice of appeal on October 24, 1985, within thirty days of the entry of the amended judgment. Offshore's notice of cross-appeal followed on November 5, 1985, within the time allowed by Fed.R.App.P. 4(a)(3). Offshore now asserts that we nevertheless lack jurisdiction because the entry of the July 29 minute order, rather than the entry of the October 3 amended findings and judgment, triggered the thirty-day appeal period of Fed. R.App.P. 4(a)(1).

> Rule 4(a)(1) provides in pertinent part:
> In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from....

> Rule 4(a)(4) provides, however, that:
> If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: ... (ii) under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; ... the time for appeal for all parties shall run from the entry of the order ... granting or denying ... [the] motion.

Offshore argues that because Rule 4(a)(4) states that the time for appeal runs from the entry of an order granting or denying a Rule 52(b) motion, the July 29 docket entry started the appeal time.

■ Acceptance of Offshore's argument would require us to hold that Campbell should have filed an appeal based solely on the clerk's entry of a minute order which indicated that the motions to amend were denied in part and granted in part, even though no final judgment existed. We cannot agree that Rule 4(a)(4) supports such an interpretation.

The language now contained in Rule 4(a)(4) originated in the 1946 amendment to Fed.R.Civ.P. 73(a), which provided in part:

> The running of the time for appeal is terminated by a timely motion made pursuant to any of the rules hereinafter enumerated, and the full time for appeal fixed in this subdivision commences to run and is to be computed from the entry of any of the following orders made upon a timely motion under such rules: ... granting or denying a motion under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted....

9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 203.24[2] (2d ed. 1986). The amendment's drafters intended to make clear that the filing of certain motions, regardless of their substantive effect, tolled the appeal time. The Advisory Committee Notes cited numerous cases which had held that the time for appeal ran from the date of the original judgment rather than from the date of the disposition of a motion unless the motion sought materially or substantially to modify the judgment. *Id.* at ¶ 203.25[1]. *See also* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2582, at 724–25 & n. 74 (1971). The amendment nullified these decisions by clarifying that the appeal time was to run anew from the final disposition of the enumerated motions.

Rule 4(a)(4) now embodies the exception to the general rule that the time for filing a notice of appeal begins to run when the judgment is entered. 9 *Moore's Federal Practice, supra,* at ¶ 204.12[1]. It enumerates certain post-decisional motions, including a Fed.R.Civ.P. 52(b) motion to amend findings of fact, which "destroy[ ] the finality of the judgment." 5A *Moore's Federal Practice, supra,* at ¶ 52.11[3]. Although Rule 4(a)(4) alters the time within which an appeal must be filed, it does not alter the absolute prerequisite to an appeal—the existence of a final judgment. 28 U.S.C. § 1291 (1982).

█ A final decision "is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Here, it is clear that the district court's action on July 29 was not intended to be final. The court contemplated the preparation and entry of a new set of factual findings and formal judgment. Thus, the entry of the minute order did not finally dispose of the matter. Only when a judge acts in a manner which clearly indicates an intention that the act be final, and a notation of that act has been entered on the docket, does the time for appeal begin to run. *E.g., United States v. Samango,* 607 F.2d 877, 880 & n. 5 (9th Cir.1979) (citing *Carnes v. United States,* 279 F.2d 378, 380 (10th Cir.), *cert. denied,* 364 U.S. 846, 81 S.Ct. 88, 5 L.Ed.2d 69 (1960)). The amended findings and judgment entered on October 3 constituted the court's final act which started the appeal time running. The appeals therefore are timely.

### B. Campbell's Appeal

The district court held that Campbell's negligence caused Thurman's injuries and that Campbell, therefore, must indemnify Offshore for payments made to Thurman in connection with his accident. Campbell admits it was negligent, but contends that the court erred in requiring Campbell to indemnify Offshore because there was no warranty of workmanlike performance be-tween the parties. Campbell also contends that it should receive contribution from Offshore, in an amount equal to Offshore's comparative fault, because Offshore did not require Thurman to wear a hard hat and therefore Offshore's ship was unseaworthy. Campbell further maintains that the district court erred in finding negligence per se.

█ Campbell first argues that the district court erred in granting indemnity to Offshore because there was no warranty of workmanlike performance between the contractor and the shipowner. Campbell contends that the doctrine which the Supreme Court adopted in *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 133–34, 76 S.Ct. 232, 237–38, 100 L.Ed. 133 (1956), is no longer viable. That doctrine permits indemnification for breach of an implied warranty of workmanlike performance. Campbell's contention lacks merit.

In *Ryan,* the Supreme Court adopted an indemnity theory to permit the shipowner to recover for a stevedoring contractor's breach of an implied warranty of workmanlike performance, where the contractor's conduct in violation of that standard caused a longshoreman's injury. 350 U.S. at 133–35, 76 S.Ct. at 237–38. The *Ryan* doctrine was later extended to include seamen injured by a contractor's conduct. *See McCune v. F. Alioto Fish Co.,* 597 F.2d 1244, 1251 (9th Cir.1979); *Flunker v. United States,* 528 F.2d 239, 242–43 (9th Cir. 1975). The warranty of workmanlike performance, which requires at least the exercise of ordinary and reasonable care, *Garrett v. United States Lines, Inc.,* 574 F.2d 997, 1000–01 (9th Cir.1978), is intended to ease the shipowner's burden of absolute liability stemming from the doctrine of unseaworthiness. *Flunker,* 528 F.2d at 242–43.

In 1972, Congress eliminated the application of the doctrines of unseaworthiness and indemnification to longshoremen, by amendment to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq. Flunker,* 528 F.2d at 242. This court, however, has specifically

stated that the rationale and holding of *Ryan* and its progeny have retained their vitality in cases where a seaman rather than a longshoreman has been injured. *Id.* at 242–43. Hence, the doctrine of indemnification for breach of an implied warranty was properly applied in this case. In support of its contention that *Ryan* is no longer viable, Campbell relies on out-of-circuit authority, *Smith & Kelly Co. v. S/S Concordia TADJ,* 718 F.2d 1022, 1027–28 (11th Cir.1983), in which the court held that the *Ryan* indemnification doctrine did not apply in a case involving a seaman injured by the negligence of a stevedore. We, however, are bound by our decision in *Flunker.* Moreover, Campbell offers no persuasive reasons why that decision should be regarded as unsound.

Campbell next argues that the district court should have found Offshore liable for Thurman's injuries because Offshore was negligent in failing to require Thurman to wear a hard hat and this negligence rendered the ship unseaworthy. The district court found that "there was no reason for Thurman to believe that the wearing of a hard hat was a necessary safety measure while on the aft deck." Moreover, "[t]here was no Offshore or industry policy requiring the use of hard hats by crew members while on the aft deck under the circumstances of this case [and] Offshore's safety program was adequate under the circumstances." Based on these findings the court concluded that "Offshore was not negligent and is not at fault in any fashion for Thurman's injuries and damages." The issue is thus whether the district court's findings of fact are clearly erroneous. *Garrett,* 574 F.2d at 999. They are not.

First, the record shows that although Thurman had asked for crane services, he had no reason to expect that the operator would immediately train the boom towards him after he turned to walk away. There is evidence that the operator was supposed to finish other work first. There is also evidence that the operator could have moved the crane in such a way that the boom would not have traveled over Thurman. Moreover, when the operator moved the crane he did not sound any warning

bells or horns. Presumably, if a warning had been sounded, Thurman could have moved out of the way.

Second, the evidence indicates that the industry-wide practice, both for the shipyard and the vessel owners, was to require crew members to wear hard hats only when they were off the ship and walking through the shipyard, or when they were working under a load. Crew members rarely worked under loads because the loading and unloading of cargo was the job of longshoremen. Furthermore, the record indicates that the aft deck was not considered "a work area" for crew members, and that overhead hazards did not normally exist there.

 Thus, the district court's finding that Offshore was not negligent in failing to require Thurman to wear a hard hat is not clearly erroneous. Because the district court properly found that Offshore was not negligent, it properly declined to apply the doctrine of comparative negligence. *See Protectus Alpha Navigation Co. v. North Pacific Grain Growers, Inc.,* 767 F.2d 1379, 1383 (9th Cir.1985) (comparative negligence does not apply where there is no shipowner negligence to compare).

 Campbell also contends that the district court erred in finding that Campbell was negligent per se based on violations of certain Occupational Safety and Health Administration (OSHA) regulations. *See* 29 C.F.R. § 1915.111(a) (requiring periodic machinery inspection); 1915.116(j) (prohibiting swinging or suspension of loads over personnel); 1915.116(p) (requiring warning when crane operating). In addition to finding that Campbell was negligent per se, the district court found that Campbell committed "various acts of ordinary negligence" which proximately caused Thurman's injuries and damages. Campbell does not contest this finding and in fact admits it was negligent. Therefore, even though the district court may have been incorrect in concluding that Campbell's violations of OSHA regulations constituted negligence per se, Campbell still must indemnify Offshore because of its ordinary negligence.

*C. Offshore's Claim for Attorney Fees*

Offshore cross-appeals contending that it is entitled to $42,378.56 for attorney fees and costs incurred until the district court dismissed Campbell's Fed.R.Civ.P. 14(c) third-party complaint.

■ A shipowner indemnitee is entitled to collect from a third party attorney fees and expenses incurred in defending against the claim of a seaman whose injury was caused by the third party. Such costs are considered part of the foreseeable damages of the breach of the warranty of workmanlike performance. *Hanseatische Reederei Emil Offen & Co. v. Marine Terminals Corp.*, 590 F.2d 778, 781 (9th Cir.1979); *United States v. San Francisco Elevator Co.*, 512 F.2d 23, 28 (9th Cir.1975); *Arista Cia. DeVapores, S.A. v. Howard Terminal*, 372 F.2d 152, 154 (9th Cir.1967). The entitlement to fees and expenses includes only the cost of defending against the plaintiff, however, not the cost of establishing the right to indemnity. *Flunker*, 528 F.2d at 246. Offshore contends that although the district court correctly recognized this principle, the court incorrectly concluded that Offshore, as a third-party defendant under Fed.R.Civ.P. 14(c), did not defend itself against Thurman directly, but rather, defended only against Campbell's third-party complaint.

Under Fed.R.Civ.P. 14(c), a defendant in admiralty may implead a third-party defendant and require the third party to answer the plaintiff's complaint as well as the third-party complaint. *See Peter Fabrics, Inc. v. S.S. "Hermes,"* 765 F.2d 306, 313 (2d Cir.1985). Rule 14(c) thus differs from Rule 14(a) in which the third-party defendant answers only the third-party complaint. *See* 6 Wright & Miller, *supra*, at § 1465. When the admiralty defendant elects to require the third-party defendant to answer the plaintiff's complaint directly, the court treats the action as if the plaintiff had commenced it against the defendant and third-party defendant jointly. *Riverway Co. v. Trumbull River Services, Inc.*, 674 F.2d 1146, 1154–55 (7th Cir.1982). The plaintiff may then proceed to judgment against the third-party defendant directly.

*See* Fed.R.Civ.P. 14(c) advisory committee note to 1966 amendment.

■ Campbell demanded in its third-party complaint that Offshore "make its defenses and answer directly to the claims of the Plaintiff as well as to the claims herein of Third-Party Plaintiffs." Offshore in fact did so. Until Thurman was dismissed from the suit, Offshore thus defended against Thurman directly, as well as against Campbell's claim for indemnity. Offshore therefore is entitled to fees and costs from Campbell.

Because the record does not indicate how much of Offshore's requested fees and costs were spent defending against Thurman as opposed to Campbell, we remand to the district court for that determination. The district court's decision in all other respects is affirmed.