154 F.3d 1042
 1998 A.M.C. 2710, 98 Cal. Daily Op. Serv. 6984,
98 Daily Journal D.A.R. 10,782,
98 Daily Journal D.A.R. 9647
 Jason KNIGHT, Plaintiff,
v.
ALASKA TRAWL FISHERIES, INC. In Personam, and F/T Endurance,
Official No. 592205, In Rem,
Defendants-Appellants-Cross-Appellees,
v.
NORTH STAR TERMINAL AND STEVEDORE CO., INC., In Personam,
Defendant-Appellee-Cross-Appellant.
 Nos. 96-35695, 96-35720.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 15, 1998.
Decided Sept. 4, 1998.
As Amended Oct. 14, 1998.
 
 Steven E. Mulder, Bogle & Gates, Anchorage, Alaska, for defendants-appellants-cross-appellees.
 Michael W. Sewright, Burr, Pease & Kurtz, Anchorage, Alaska, for defendant-appellee-cross-appellant.
 Appeals from the United States District Court for the District of Alaska; James K. Singleton, Chief District Judge, Presiding. D.C. No. CV-94-00121-JKS.
 Before: FARRIS, O'SCANNLAIN and MICHAEL DALY HAWKINS, Circuit Judges.
 MICHAEL DALY HAWKINS, Circuit Judge:
 
 
 1
 We must decide whether a negligent shipowner may receive indemnification under Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), from a negligent contractor when a shipowner is liable to an injured seaman for unseaworthiness and Jones Act negligence.
 
 BACKGROUND
 
 2
 During the transfer of cargo from the F/V ENDURANCE to the EIYO MARU, Jason Knight, a seaman aboard the ENDURANCE, was seriously injured. He sued Alaska Trawl Fisheries, Inc. ("Alaska Trawl"), the owner of the ENDURANCE, for unseaworthiness, maintenance and cure, and Jones Act negligence, 46 U.S.C.App. § 688, and North Star Terminal and Stevedoring Company ("North Star"), the stevedoring company aboard the EIYO MARU, and other defendants for general maritime negligence.[1] All defendants cross-claimed against each other for indemnity and contribution.
 
 
 3
 Shortly before trial, all defendants settled with Knight for $1.2 million in damages, plus $190,000 in maintenance and cure paid by Alaska Trawl. Alaska Trawl moved for partial summary judgment, seeking indemnification from North Star for damages paid to Knight. The district court denied the motion and, after a bench trial, found North Star 65% at fault and Alaska Trawl 35% at fault. The district court ordered each defendant liable for its percentage of fault. Alaska Trawl appeals the district court's decision to apply comparative fault principles, not its factual findings of fault.[2]
 
 ANALYSIS
 
 4
 This case hinges on the different remedies available to a seaman injured in the course of employment. Traditional maritime law recognizes two claims by a seaman injured in the course of employment: (1) maintenance and cure until the end of the voyage (i.e., living and medical expenses), and (2) "damages for injuries sustained due to the unseaworthiness of the ship." California Home Brands, Inc. v. Ferreira, 871 F.2d 830, 832 (9th Cir.1989) (citing The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903)). Under the seaworthiness doctrine, a shipowner is strictly liable for breach of its absolute, nondelegable duty to provide a seaworthy ship. See id. Because the concept of negligence is irrelevant to a claim of unseaworthiness,[3] a seaman cannot recover consequential damages under this doctrine. See id. at 833. Thus, Congress enacted the Jones Act, which created a negligence cause of action for seamen against their employers. See id.
 
 
 5
 Ryan indemnity, rooted in the seaworthiness doctrine, was the final piece in a line of Supreme Court cases creating triangular liability and allocating fault among longshoremen, stevedores, and shipowners. See generally Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 261-62, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). First, the Supreme Court held that a longshoreman working on a ship was entitled to a warranty of seaworthiness from a shipowner. See Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Next, the Supreme Court held that a shipowner could not obtain contribution from a concurrent tortfeasor employer. See Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 285, 72 S.Ct. 277, 96 L.Ed. 318 (1952). This, of course, created a great inequity for shipowners who were held strictly liable for injuries to longshoremen caused by the acts of third persons.
 
 
 6
 In Ryan, the Court sought to correct this problem by creating an implied warranty of workmanlike performance in every contract between a maritime contractor and shipowner. See 350 U.S. at 133, 76 S.Ct. 232. The shipowner could receive indemnification from the contractor for injuries to the longshoreman which were a result of the contractor's breach of warranty. See id. The Court explicitly held that, although the duty of reasonable care found in the warranty was similar to that in the negligence standard, the shipowner's cause of action was based in contract, not tort. See id. at 133-34, 76 S.Ct. 232. Thus, tort principles did not apply. The Court later held that a contractor could breach the implied warranty of workmanlike performance even in the absence of negligence. See Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 323-24, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964).
 
 
 7
 In 1972, Congress amended the Longshore and Harbor Workers' Compensation Act, ("LHWCA"), 33 U.S.C. § 905(b), eliminating the application of the doctrine of unseaworthiness to longshoremen and also the remedy of indemnification to shipowners. See Edmonds, 443 U.S. at 262, 99 S.Ct. 2753 (recognizing the legislative overruling of Sieracki and Ryan ). Congress ended the circuitous liability created by the Supreme Court: longshoremen could not sue shipowners for unseaworthiness but obtained greater compensation benefits; contractors had to pay these higher benefits but could not be sued by shipowners for Ryan indemnity; and shipowners could not receive Ryan indemnity from contractors but could be sued by longshoremen only for negligence. Thus, it appeared, Ryan was a dead letter.
 
 
 8
 This and other circuits, however, have recognized the continued vitality of Ryan indemnity in seamen cases. See, e.g., Flunker v. United States, 528 F.2d 239, 242-43 (9th Cir.1975). We have emphasized that Ryan indemnity is based on a shipowner's nondelegable duty to provide a seaworthy ship, a duty traditionally owed to seamen. See Campbell Indus., Inc. v. Offshore Logistics Int'l, Inc., 816 F.2d 1401, 1404 (9th Cir.1987) ("The warranty of workmanlike performance ... is intended to ease the shipowner's burden of absolute liability stemming from the doctrine of unseaworthiness."); Flunker, 528 F.2d at 243 (cautioning against "unmoor[ing] the theory from the unseaworthiness doctrine from which it sprung"); Davis v. Chas. Kurz & Co., Inc., 483 F.2d 184, 187 (9th Cir.1973) ("The circumstance which gives rise to the implied warranty is the duty of seaworthiness owed by the party seeking indemnification.").
 
 
 9
 We have never allowed, as Alaska Trawl urges us to do now, a negligent shipowner to obtain Ryan indemnity outside the seaworthiness doctrine. In Flunker, the shipowner was liable to the injured seaman only under the seaworthiness doctrine. See 528 F.2d at 241. We specifically noted:
 
 
 10
 Most cases to date have implied such a [Ryan ] warranty only when the shipowner owes a nonfault duty to the plaintiff. We do not need to decide whether the warranty of workmanlike service extends beyond non-fault situations.
 
 
 11
 Id. at 243 n. 3 (internal citation omitted).
 
 
 12
 Our most recent cases similarly did not decide whether a negligent shipowner found liable for negligence and unseaworthiness could obtain Ryan indemnity from a negligent contractor. In Campbell Industries, we held that a negligent contractor must indemnify a shipowner under Ryan for maintenance and cure benefits paid to an injured seaman. See 816 F.2d at 1405. Two points of that case are noteworthy: (1) the seaman did not sue the shipowner for Jones Act negligence; and (2) the shipowner was not at fault for the injuries. See id. at 1402, 1405.
 
 
 13
 In California Home Brands, we again emphasized that Ryan indemnity was tied to the seaworthiness doctrine. There we held a shipowner could not obtain Ryan indemnity from a seaman for Jones Act negligence resulting in injury to another seaman. See 871 F.2d at 836. "Since Jones Act suits are based on negligence, not any absolute duty of the shipowner, the rationale for implying a warranty of workmanlike performance does not apply here." Id.
 
 
 14
 Thus, if Knight had sued Alaska Trawl only for negligence, our precedent makes clear that Alaska Trawl could not obtain Ryan indemnity from North Star. Alaska Trawl argues the critical difference in this case is that Knight sued Alaska Trawl for both negligence and unseaworthiness. In the district court's order finding Alaska Trawl 35% at fault for Knight's injuries, it explicitly stated that Alaska Trawl's fault was attributable to negligence, not breach of the warranty of seaworthiness. The court seemed to have blurred the distinction between negligence and the warranty of seaworthiness, however, finding "they are virtually the same."
 
 
 15
 Courts have split on whether a negligent shipowner may obtain Ryan indemnification for its negligence and breach of the seaworthiness warranty. Some circuits continue to apply Ryan indemnity, even when the shipowner is partially at fault. See Cooper v. Loper, 923 F.2d 1045, 1051 (3d Cir.1991) (shipowner 20% at fault); Oglebay Norton Co. v. CSX Corp., 788 F.2d 361, 364, 366 (6th Cir.1986) (shipowner 75% at fault); Farrell Lines, Inc. v. Carolina Shipping Co., 509 F.2d 53, 54 (4th Cir.1975) (shipowner 25% at fault). These courts reason that the Ryan warranty should apply when the shipowner is partially at fault because the contractor is "in a far better position than the shipowner to avoid the accident." Oglebay, 788 F.2d at 365 (quoting Italia Societa, 376 U.S. at 323, 84 S.Ct. 748). Oglebay contradicts our precedent, however, because the seaman's claim against the shipowner was based on Jones Act negligence, rather than no-fault unseaworthiness. See id. at 363, 364 n. 5.
 
 
 16
 Other circuits have abandoned Ryan indemnity in favor of comparative fault in seamen personal injury cases. See Smith & Kelly Co. v. S/S Concordia TADJ, 718 F.2d 1022, 1028-29 (11th Cir.1983); Loose v. Offshore Navigation, Inc., 670 F.2d 493, 500 (5th Cir.1982); see also Black v. Red Star Towing & Transp. Co., 860 F.2d 30, 34 (2d Cir.1988) (refusing to imply Ryan warranty to a single transaction between shipowner and contractor and applying comparative fault to liability for maintenance and cure). These courts believe the trend in maritime law is to impose a duty of care on all parties to avoid accidents. See, e.g., Smith & Kelly, 718 F.2d at 1030.[4]
 
 
 17
 We find the reasoning of these courts persuasive. We hold that a negligent shipowner is not entitled to receive Ryan indemnity from a negligent contractor when the shipowner is found liable under both negligence and unseaworthiness theories. Several policy reasons support this rule.
 
 
 18
 First, "the Ryan warranty was established to correct a particular inequity: specifically, its purpose was to allow a non-negligent ship owner to recoup from a negligent contractor damages the ship owner was forced to pay to the injured party." United States v. C-Way Constr. Co., 909 F.2d 259, 264 (7th Cir.1990). "But the more the case deviates from the original Ryan scenario, ... the less justification there is to apply the warranty." Id. (shipowner could not receive Ryan indemnity from cargo owner, who had hired the negligent stevedore). We, like other circuits, have declined to extend Ryan into varied and more far-reaching fact situations than it contemplated. See Newby v. F/V Kristen Gail, 937 F.2d 1439, 1444 (9th Cir.1991) (applying comparative fault in ship collision case); California Home Brands, 871 F.2d at 836-37 (shipowner not entitled to Ryan indemnity from seaman); McCune v. F. Alioto Fish Co., 597 F.2d 1244, 1252 (9th Cir.1979) (Ryan warranty does not cover defective products); Davis, 483 F.2d at 187 (general contractor not entitled to Ryan indemnity from subcontractor); see also C-Way Constr. Co., 909 F.2d at 264 (shipowner not entitled to Ryan indemnity from materials supplier for damage to ship); Bosnor, S.A. de C.V. v. Tug L.A. Barrios, 796 F.2d 776, 785-86 (5th Cir.1986) (limiting Ryan to its facts and applying comparative fault to property damage case). When a shipowner is at fault for causing injury to a seaman by its own independent acts, the Ryan warranty should not apply.[5]
 
 
 19
 Second, comparative fault principles "best advance[ ] the goals Ryan attempted to achieve." Smith & Kelly, 718 F.2d at 1028. The Flunker court observed that one of the purposes of Ryan was "to place ultimate liability on the party who was truly at fault and who should mend his negligent ways to prevent future injury." Flunker, 528 F.2d at 243. The goal of Ryan--accident avoidance--is best achieved by encouraging all responsible parties to exercise reasonable care. When multiple parties are at fault, immunizing one party with all-or-nothing indemnity "provides little incentive for [that] party to take prophylactic steps." Smith & Kelly, 718 F.2d at 1029.
 
 
 20
 Third, comparative fault principles achieve "the just and equitable allocation of damages." United States v. Reliable Transfer Co., 421 U.S. 397, 411, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975) (establishing rule of comparative fault in ship collision cases) (internal quotations omitted). "Ryan-like indemnity creates great potential for injustice" in that "the indemnitor need not be at fault--breach of the warranty of workmanlike service may be non-negligent." Smith & Kelly, 718 F.2d at 1029. In this case, applying Ryan indemnity would cause the stevedore to indemnify the shipowner for the shipowner's own negligence toward its own employee on its own vessel. Comparative fault principles prevent this injustice: Alaska Trawl is liable only for 35% of the seaman's damages, rather than all of the damages under the seaworthiness doctrine or none of the damages under Ryan.
 
 
 21
 Finally, applying comparative fault in seamen injury cases in which the shipowner was partially at fault unifies this area with the growing trend in other maritime cases. In Reliable Transfer, the Supreme Court established the rule of comparative fault for ship collision cases. "That a vessel is primarily negligent does not justify its shouldering all responsibility, nor excuse the slightly negligent vessel from bearing any liability at all." 421 U.S. at 406, 95 S.Ct. 1708. Maritime law has also long applied the rule of comparative fault in a seaman's unseaworthiness action against a shipowner. See Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409, 74 S.Ct. 202, 98 L.Ed. 143 (1953). Recently, the Supreme Court held that nonsettling defendants' liability in an admiralty case should be calculated according to the jury's allocation of proportionate responsibility. See McDermott, Inc., v. AmClyde & River Don Castings, Ltd., 511 U.S. 202, 204, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994). Comparative fault also applies when a shipowner sues a maritime contractor for property damage. See Bosnor, S.A., 796 F.2d at 786. "The clear trend in maritime cases is to reject all-or-nothing or other arbitrary allotments of liability in favor of a system that divides damages on the basis of the relative degree of fault of the parties." Smith & Kelly, 718 F.2d at 1030.[6]
 
 CONCLUSION
 
 22
 The district court properly allocated liability according to each party's fault in causing injury to Knight. The judgment is AFFIRMED.
 
 
 
 [1]
 Knight also sued the ENDURANCE and the EIYO MARU in rem. The shipowners were sued in personam and thus represented the interests of the vessels
 
 
 [2]
 North Star filed a cross-appeal, arguing that if indemnity rather than comparative fault applied, it should receive indemnification from Alaska Trawl. That issue is mooted by our determination of Alaska Trawl's appeal
 
 
 [3]
 "The shipowner is liable for unseaworthiness, regardless of negligence, whenever the ship or its gear is not reasonably fit for the purpose for which it was intended...." Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 317 n. 3, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964)
 
 
 [4]
 Alaska Trawl argues this circuit has already refused to adopt Smith & Kelly. In Campbell Industries, we noted that Smith & Kelly held that "the Ryan indemnification doctrine did not apply in a case involving a seaman." 816 F.2d at 1405 (citing Smith & Kelly, 718 F.2d at 1027-28). This court stated that "[w]e, however, are bound by our decision in Flunker "--a case which held that the Ryan doctrine applied to seamen. Id. at 1405. Campbell Indus. did not cite or refer to the second part of Smith & Kelly, which adopted comparative fault as the method of apportioning damages in a seaman personal injury case. See Smith & Kelly, 718 F.2d at 1028-30
 
 
 [5]
 The term "fault" includes both the shipowner's negligence as well as breach of the seaworthiness warranty. We do not mean to include, however, fault derived from the acts of third parties. In other words, we address the shipowner's fault resulting from its own independent acts. Therefore, if a contractor's negligent acts create an unseaworthy condition on a ship, the shipowner is not "at fault" within this context. In our case, ALASKA TRAWL's own employees created an unseaworthy condition on the ENDURANCE and failed to use reasonable care during the cargo transfer operation. ALASKA TRAWL is "at fault" both for unseaworthiness and negligence
 
 
 [6]
 We are not compelled to reject comparative fault principles by Yamashita-Shinnihon Kisen, K.K. Tokyo v. W.J. Jones & Son, Inc., 474 F.2d 847 (9th Cir.1973). That court rejected apportionment principles in an indemnity suit brought by a shipowner against a stevedore to recover damages paid to a longshoreman. The case hinged on the unique rules of the LHWCA, see id. at 851-52, and the court felt bound to reject apportionment principles by Halcyon, see id. at 850