NESBITT, Senior Judge.
Dr. Marvin L. Meitus, Dr. Neil S. Schneider, and the doctors’ professional association (the PA) appeal an order granting partial summary judgment in favor of Carnival Cruise Lines, Inc., concluding that the doctors were obligated to indemnify Carnival for their breach of warranty of workmanlike performance. The order under appeal determines the issue of liability against the doctors and this court has jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv). See Metropolitan Dade County v. Green, 596 So.2d 458 (Fla.1992). On the following analysis, we reverse.
In 1983, Carnival entered into a contract with Dr. Meitus, Dr. Schneider, and the PA whereby the doctors became the medical directors of Carnival and agreed to provide the necessary care to Carnival crew members. This agreement provided that the doctors would “review and coordinate the physical examination as to employment of each crew member,” and would “tend to crew members on the ships with medical conditions.” The doctors’ responsibilities included: a) reviewing the recommendations of the ship doctor with respect to the crew member medical condition; b) ascertaining if the crew member is fit for continued employment or whether the crew member should be placed in the hospital in Miami or treated as an outpatient; c) being the attending physician, or obtaining a specialist, if necessary; d) notifying the appropriate Carnival representative that the crew member must sign off the ship due to medical conditions; e)in the event of a “sign off’, preparing a letter for the U.S. Immigration Department; f) estimating the time for treatment and recovery. This contract provided the fee for this service to be a minimum of $75,000 per year.
The parties operated under this contract until 1994. On November 10, 1986, Carnival crew member Valerie Campbell became ill while on board a Carnival ship docked in Nassau. Thereafter, Dr. Certo, the ship’s doctor, diagnosed an infection of the right ear and prescribed medication. Campbell’s condition deteriorated to the point where she had slurred speech and could not stand unassisted. After Dr. Cer-to examined her again, on November 13, 1986, Campbell was transferred to the Princess Margaret Hospital in Nassau.
Dr. Schneider, who was vacationing in Nassau, went to the Princess Margaret Hospital on the second or third day of *967 Campbell’s hospitalization. Appearing without previous arrangement with Nassau medical personnel, he was not permitted to see Campbell’s chart. He was also told that the attending physician, Dr. Knowles, was not immediately available. Dr. Schneider made no arrangement to meet with Dr. Knowles, however after a fifteen minute visit with Campbell, Dr. Schneider called Dr. Meitus and told him that Campbell should be transferred to Mt. Sinai Hospital in Miami as quickly as possible. Dr. Schneider made no further attempt to see Campbell or contact Dr. Knowles. However, Dr. Meitus was in touch by telephone with Dr. Knowles and Carnival.
Dr. Knowles opined that Campbell’s condition was such that she could not yet be transferred. On November 21, 1986, after an eight-day stay at Princess Margaret Hospital, Campbell was transferred to Mt. Sinai. Drs. Meitus and Schneider acted as Campbell’s attending physicians. They referred Campbell to Dr. Ratzan and Dr. Dokson, an infectious disease specialist and neurological specialist, respectively. Campbell was eventually diagnosed as suffering from viral encephalitis.
Arguing that she had not been given appropriate treatment for this condition and as a result had suffered serious permanent injury, Campbell filed suit against Drs. Meitus, Schneider, their PA, and Carnival, as well as other medical providers. Carnival requested a defense from Mt. Sinai, the doctors involved in the case, and their PAs, and when none was tendered, Carnival settled with Campbell. Carnival then filed this suit against appellants and the other health care providers involved in Campbell’s care seeking to recover the money it had paid to Campbell. The cruise line claimed breach of warranty, and sought indemnification, subrogation, and contribution. After settling with all of the other defendants, Carnival filed its motion for summary judgment as to its indemnity claim against Drs. Meitus and Schneider and the doctors’ PA.
After a careful review of the law in this area we conclude that summary judgment on the issue of indemnity should not have been granted and that the case should be remanded for an apportionment of fault by the trier of fact.
The cruise line relied on a number of cases to support its entitlement to summary judgment. We find none of those cases to be determinative of the instant controversy. Weissman v. Boating Magazine, 946 F.2d 811 (11th Cir.1991) is a tort case, not a breach of warranty of workmanlike performance case. GAB Business Services, Inc. v. Syndicate 627, 809 F.2d 755, 762 (11th Cir.1987) supports the proposition that proof of actual liability is not required where an indemnitee informs an indemnitor of a proposed settlement and the indemnitor fails to object. However, the case does not stand for the proposition of entitlement to indemnity under the instant facts. Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1217 (5th Cir.1986) involved the interpretation of contractual provisions for indemnity, again not the case at hand.
Finally, and chiefly, Carnival relies on Parfait v. Jahncke Service, Inc., 484 F.2d 296 (5th Cir.1973) and cases citing to Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). In Parfait the court concluded that under the Ryan Doctrine, stevedores and other shore-based contractors who went aboard a vessel by an owner’s arrangement, or by his consent to perform service for the ship’s benefit, impliedly warranted to shipowners that they would accomplish their task in a workmanlike manner, and indemnity did not rest on tort concepts but on contractual warranty theory and the theories of “active” and “passive” as well as “primary” and “secondary” negligence were not applicable. Case law since Parfait clearly demonstrate a change in thought.
Smith & Kelly Co. v. S/S Concordia TADJ, 718 F.2d 1022 (11 Cir.1983) traces the “rise and fall” of the Ryan doctrine. *968 See Smith, 718 F.2d at 1025. The Eleventh Circuit has concluded that the reasons for application of the all or nothing recovery based on breach of warranty of workmanlike performance outlined in Ryan and its progeny do an injustice in situations where the contributing fault of each party can be ascertained and apportioned.
The tortured history of Ryan was recently outlined, and its application rejected, in Knight v. Alaska Trawl Fisheries, Inc., 154 F.3d 1042, 1045-46 (9th Cir.1998):
Courts have split on whether a negligent shipowner may obtain Ryan indemnification for its negligence and breach of the seaworthiness warranty. Some circuits continue to apply Ryan indemnity, even when the shipowner is partially at fault. See Cooper v. Loper, 923 F.2d 1045, 1051 (3d Cir.1991) (shipowner 20% at fault); Oglebay Norton Co. v. CSX Corp., 788 F.2d 361, 364, 366 (6th Cir. 1986) (shipowner 75% at fault); Farrell Lines, Inc. v. Carolina Shipping Co., 509 F.2d 53, 54 (4th Cir.1975) (shipowner 25% at fault). These courts reason that the Ryan warranty should apply when the shipowner is partially at fault because the contractor is “in a far better position than the shipowner to avoid the accident.” Oglebay, 788 F.2d at 365 (quoting Italia Societa, 376 U.S. at 323, 84 S.Ct. 748[, 11 L.Ed.2d 732]). Oglebay contradicts our precedent, however, because the seaman’s claim against the shipowner was based on Jones Act negligence, rather than no-fault unseaworthiness. See id. at 363, 364 n. 5.
Other circuits have abandoned Ryan indemnity in favor of comparative fault in seamen personal injury cases. See Smith & Kelly Co. v. S/S Concordia TADJ, 718 F.2d 1022, 1028-29 (11th Cir. 1983); Loose v. Offshore Navigation, Inc., 670 F.2d 493, 500 (5th Cir.1982); see also Black v. Red Star Towing & Transp. Co., 860 F.2d 30, 34 (2d Cir. 1988) (refusing to imply Ryan warranty to a single transaction between shipowner and contractor and applying comparative fault to liability for maintenance and cure). These courts believe the trend in maritime law is to impose a duty of care on all parties to avoid accidents. See, e.g., Smith & Kelly, 718 F.2d at 1030.
In the instant ease, Carnival maintained that Campbell had a 70%-80% chance of full recovery had she been given the medicine Acyclovir within the first few days after her transfer from Princess Margaret Hospital. Carnival also pointed to its expert Dr. Posner’s testimony that had Campbell been given steroids upon her arrival at Mt. Sinai she would have more likely than not fully recovered.
However Drs. Meitus and Schneider responded by arguing that the cruise line’s own negligence had contributed to Campbell’s injury and precluded the doctors from fulfilling their contractual obligations. Appellants pointed to the testimony of Dr. Dokson, who observed that Campbell was ill for three days aboard ship before Dr. Certo transferred her to Princess Margaret Hospital, and that Dr. Certo should have had Campbell airlifted to Mt. Sinai. Dr. Dokson further testified that the window of opportunity to treat Campbell with Acyclovir was seventy-two hours and that Acyclovir would not have helped Campbell by the time she reached Mt. Sinai. Also, Dr. Dokson testified that the lack of specific testing during Campbell’s eight-day stay at Princess Margaret handicapped appellants in performing their contractual duties at Mt. Sinai. Likewise, Dr. Ratzan testified that Acyclovir would not have worked for Campbell by the time she arrived at Mt. Sinai.
Where a record discloses that genuine fact issues exist, summary judgment is precluded. See Holl v. Talcott, 191 So.2d 40 (Fla.1966); O’Donovan v. Citibank, FSB, 710 So.2d 654 (Fla. 3d DCA 1998). We agree with the trial court’s conclusion that maritime law applied to the instant controversy. As stated in Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603, 610, 111 S.Ct. 2071, 114 L.Ed.2d 649 *969 (1991) it is the “nature and subject-matter” of the contract at issue that should be the crucial consideration in assessing admiralty jurisdiction. See generally Kossick v. United Fruit Co., 365 U.S. 731, 735-38, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961). Here, Carnival performed its maritime maintenance and cure obligations through its contract with the doctors. See Maritime Overseas Corp. v. United States, 608 F.2d 1260 (9th Cir.1979). The fact that certain pre-employment physicals were also part of the contract at issue does not change this analysis. This, however, is where our agreement with the ruling below ends. Clearly, genuine issues of material fact precluded the summary judgment ordered. An allocation of damages by the trier of fact is called for under Smith, 718 F.2d at 1022.
Accordingly, the case is reversed and remanded.